UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| J&H LANMARK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-333-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TWIN CITY FIRE | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Twin City Fire Insurance Company's motion for judgment on the pleadings. The defendant's motion will be granted because Plaintiff J&H Lanmark, Inc.'s claims are barred by the virus exclusion contained in the applicable insurance policy.

## I.  Background

Plaintiff J&H Lanmark ("J&H") is a retail business located in Lexington, Kentucky. The company specializes in the sale of outdoor sportswear and equipment. On or about June 1, 2019, J&H entered into an insurance contract with Defendant Twin City Fire Insurance Company ("Twin City") (Spectrum Business Owner's Policy No. 41 SBAAA9595, hereafter, "the Policy"). According to J&H, the Policy "is an all-risk policy, insofar as it provides that covered causes of loss under the policy mean direct physical loss or direct physical damages, unless the loss is specifically excluded or limited in the policy." J&H also purchased an additional Endorsement to the policy which provided "Limited Fungi, Bacteria, or Virus Coverage."

- 1 -

On March 6, 2020, Governor Andy Beshear signed Executive Order 2020-215, declaring a state of emergency in Kentucky due to the outbreak of novel coronavirus ("COVID-19").  Less than three weeks later, on March 22, 2020, Governor Beshear signed Executive Order 2020-246, which ordered the closure of "[a]ll in-person retail businesses that [were] not life-sustaining," effective the following day.[1]  These decisions severely impacted (and in many instances resulted in the permanent closure of) numerous businesses throughout the Commonwealth.  J&H was not considered a life-sustaining business under the Executive Order and, therefore, closed beginning March 23, 2020, at 8:00 p.m.[2]  J&H made a claim under the Policy for loss of business income, which Twin City denied on March 30, 2020, and again on April 20, 2020.

J&H filed suit in Fayette County Circuit Court on July 31, 2020, alleging breach of contract and seeking a declaratory judgment that it is owed coverage under the Policy's Special Coverage Form and/or the Limited Fungi, Bacteria, or Virus Coverage Endorsement within the Policy.[3]  Twin City removed the matter to this Court based on diversity jurisdiction under 28 U.S.C. § 1332 and has now filed a motion for judgment on the pleadings.

---

[1]      https://governor.ky.gov/attachments/20200322_Executive-Order_2020-246_Retail.pdf. The Executive Order also provides: "Retail businesses that are not life-sustaining may provide local delivery and curbside service of online or telephone orders."

[2]      Life-sustaining businesses included grocery stores, pharmacies, banks, hardware stores, and other business that provided "staple goods."

It is unclear when J&H reopened.  However, J&H notes that Governor Beshear and the Secretary of the Cabinet for Health and Family Services signed orders allowing in-person retail businesses to reopen on May 20, 2020.

[3]      J&H also asserted claims against Governor Beshear and Secretary of State Michael G. Adams, but those claims were previously dismissed.  [Record No. 16]

## II. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

A motion to dismiss tests the legal sufficiency of a Complaint. Rule 8 sets forth the general rules of pleading and requires that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a claim need not contain "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a motion to dismiss, the court may rely on documents attached to or referred to in the complaint that are central to the claims therein without converting the motion into a motion for summary judgment. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

A complaint must "contain sufficient matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[L]egal conclusions masquerading as factual allegations" will not suffice. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Additionally, any claims that are not recognized as cognizable causes of action under applicable law do not state a claim upon which relief can be granted and, therefore, may be

dismissed under Rule 12(b)(6).  *See, e.g., Judkins v. HSBC Mortg. Servs. Inc.*, 586 F. App'x 216 (6th Cir. Dec. 5, 2014) (Mem. Op.); *Camuel v. Kroger Co.*, 2018 WL 4686420, at *3 (E.D. Ky. Sept. 28, 2018).

### III.  Discussion

### A.  General Principles of Contract Law

Under Kentucky law, interpretation and construction of an insurance contract is a matter of law for the court.[4]  *Kemper Nat. Ins. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002).  An insurance contract is to be read "according to its plain meaning, its true character and purpose, and the intent of the policies."  *Liberty Corporate Capital Ltd. v. Security Safe Outlet, Inc.*, 937 F. Supp. 2d 891, 898 (E.D. Ky. 2013).  When the language of an insurance contract is ambiguous or self-contradictory, it is construed in favor of the insured. *Id.* at 897 (citing *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992)). However, the Court will not create an ambiguity where there is none so that it may resolve a dispute in the insured's favor.  *See id.* at 898.

### B.  J&H's Insurance Claims are Barred by the Virus Exception

The Policy's Special Coverage Form provides: "We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss."[5]  [Record No. 13-1, p. 35]  "Covered Causes of Loss" are defined as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: a.

---

[4]     The parties agree that Kentucky law applies.

[5]     The parties dispute whether the plaintiff's loss constitutes a "direct physical loss of or physical damage to Covered Property."  However, the Court need not resolve this question because the loss would be barred by the Virus Exception, regardless.

Excluded in Section B., EXCLUSIONS; or b. Limited in Paragraph A.4. Limitations; that

follow." *Id.* at p. 36.  The Special Coverage Form includes "Additional Coverages" including

lost business income, extra expenses incurred during restoration, and lost business income

sustained when access to the covered property is prohibited by order of civil authority.  *Id.* at

pp. 44-45.  J&H claims that it is entitled to coverage under each of these provisions.

J&H also purchased Limited Fungi, Bacteria or Virus Coverage.  *Id.* at p. 128.  The top

of the document states: "This endorsement changes the policy.  Please read it carefully. . . .

This endorsement modifies insurance provided under the following:  SPECIAL PROPERTY

COVERAGE FORM . . ."  It provides:

> **[A.]2.**  The following exclusion is added to Paragraph **B.1.** Exclusions of the . .
> . Special Property Coverage Form. . .  **i. "Fungi," Wet Rot, Bacteria And
> Virus**
>
> We will not pay for loss or damage caused directly or indirectly by any of the
> following.  Such loss or damage is excluded regardless of any other cause or
> event that contributes concurrently or in any sequence to the loss: (1) Presence,
> growth, proliferation, spread or any activity of "fungi," wet rot, dry rot, bacteria
> or virus.  (2)  But if "fungi," wet rot, dry rot, bacteria or virus results in a
> "specified cause of loss" to Covered Property, we will pay for the loss or damage
> caused by that "specified cause of loss." *Id.*

Specified causes of loss include "explosion, windstorm or hail; smoke; aircraft or

vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment;

sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; [and] water

damage." *Id.* at p. 59.  Section B.1. of the Endorsement also provides that the defendant will

pay for loss or damage by "fungi," wet rot, dry rot, bacteria and virus if the "fungi," wet rot,

dry rot, bacteria, or virus is the result of a specified cause of loss other than fire or lightning or

an equipment breakdown. *Id.* at p. 129.

Despite this unambiguous language, J&H contends that Twin City should pay for its loss caused by COVID-19. J&H reasons that, "if Defendant wanted to exclude pandemics from coverage it easily could have done so." [Record No. 25, p. 8] This assertion may be true. However, the defendant's failure to exclude pandemics from coverage does not negate the parties' agreement to limit loss or damage caused by viruses. J&H does not appear to contend, and the Court is unaware, of any serious argument that COVID-19 does not constitute a virus.[6]

J&H urges the Court to look beyond the plain language of the policy, arguing that grouping "virus" with "things that are not disease-causing agents . . . would be understood by insureds . . . not to exclude coverage in the context of a global pandemic." [Record No. 25, p. 8] In support, it relies on *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company, Ltd.*, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020). There, the plaintiff healthcare provider closed its doors in response to the Governor of Florida's Executive Order requiring suspension of non-essential businesses. The plaintiff notified the defendant-insurer of its losses under an all-risk insurance policy issued by the defendant. The defendant then denied coverage and the plaintiff filed suit.

In denying the defendant's motion to dismiss, the court observed that "[d]enying coverage for losses stemming from COVID-19 . . . does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these types of business losses." 2020 WL 5939172, at *4. Additionally, the Court was disinclined to grant the motion to dismiss because the parties had

---

[6] *What is COVID-19?*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *https://www.cdc.gov/coronavirus/2019-ncov/faq.html* (updated March 1, 2021).

not tendered the complete insurance policy for the court's review.  The same is not true in this case, as the Court has reviewed both the Special Coverage Form and the Virus Endorsement. And to the extent the *Urogynecology Specialist of Florida* of Court declined to assign "virus" its plain meaning, the Court disagrees with that interpretation.

The plaintiff has not identified any other decision supporting this view.  Further, it appears that all other courts to have addressed the issue have determined that loss-of-use claims like the plaintiff's are barred by the applicable virus exclusions.  *See, e.g., Turek Enters., Inc. v. State Farm Mutual Auto. Ins. Co.*, 484 F. Supp. 3d 492 (E.D. Mich. 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353 (W.D. Tx. 2020); *Newchops Restaurant Comcast LLC v. Admiral Indemnity Co.*, 2020 WL 7395153 (E.D. Penn. Dec. 17, 2020); *Raymond H Nahmad DDS PA v. Hartford Casualty Ins. Co.*, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020); *Boxed Foods Co., LLC v. California Capital Ins. Co.*, 2020 WL 6271021 (N.D. Cal. Oct. 26, 2020).

To the extent J&H argues its claim "has nothing to do with the 'presence, growth, proliferation, spread, or any activity' of [COVID-19] at the Plaintiff's premises," there is no requirement in the Policy language that the virus activity be *at* the Covered Premises.  The plaintiff's claim that its loss was caused by the Governor's Executive Order, not COVID-19, fares no better.  By its terms, the Executive Order was a direct response to COVID-19.[7]  The Policy provides that defendant will not pay for loss or damage caused directly *or indirectly* by

---

[7]     https://governor.ky.gov/attachments/20200322_Executive-Order_2020-246_Retail.pdf (describing COVID-19-related state of emergency that necessitated closure in non-life-sustaining businesses)

a virus "*regardless of any other cause or event that contributes concurrently or in any sequence to the loss*."  [Record No. 13-1, p. 128]

> Finally, Section B.1.f. of the Virus Endorsement provides as follows:
>
> The following applies only if a Time Element Coverage Applies to the 'scheduled premises' and only if the suspension of 'operations' satisfies all the terms and conditions of the applicable Time Element Coverage.  (1) If the loss which resulted in 'fungi,' wet or dry rot, bacteria or virus does not in itself necessitate a suspension of 'operations,' but such suspension is necessary due to loss or damage to property caused by 'fungi,' wet or dry rot, bacteria or virus, then our payment under the Time Element Coverage is limited to the amount of loss and expense sustained in a period of not more than 30 days unless another number of days is indicated in the Declarations.

*Id.* at p. 130.  "Time Element Coverage" is not defined in the Policy.  According to J&H, Time Element Coverage is an insurance term "referring to coverage for loss resulting from the inability to put damaged property to its normal use."  [Record No. 25, p. 5]  J&H asserts that the most common types of Time Element Coverage are business interruption and extra expense coverage.  Notably, Section B.1.f. does not limit coverage to damage caused by fungi, wet or dry rot, bacteria or virus caused by specified causes of loss, as in Section B.1.a.  Accordingly, J&H argues that, even if the Virus Exclusion applies, it may recover under this provision.

The Court declines to view this single provision in isolation.  Instead, the Policy, including the Virus Endorsement, must be viewed as a complete document and the terms must be read in way that gives meaning to all of them, to the extent possible.  *See Martin Oil & Gas Co. v. Fyffe*, 65 S.W.2d 686, 687-88 (Ky. 1933) (holding that courts must "look to the entire instrument and deduce the intention of the parties from the language employed.").  Subsection (1) of Section B.1.f. contemplates "the loss which resulted in 'fungi,' wet or dry rot, bacteria or virus."  The only loss resulting in virus contemplated by the Policy is that under Section B.1.a. of the Virus Endorsement, which requires the virus to have been caused by a specified

- 8 -

cause of loss other than fire or lightning or equipment breakdown.[8]  [*See* Record No. 13-1, p. 129.]

J&H relies on *Independence Barbershop, LLC v. Twin City Fire Insurance Company*, 2020 WL 6572428 (W.D. Tx. Nov. 4, 2020), in which that court found that section B.1.f. of the Virus Endorsement was not limited by the language of Section  B.1.a.  However, the court in that case made no attempt to reconcile the language in sentence (1) of section B.1.f. with the rest of the policy.  Instead, it summarily concluded that the provision was not limited by the more specific language of section B.1.a.  The undersigned is not persuaded by this non-binding decision since it fails to apply well-established rules of contract interpretation.

### C.  The Defendant is Entitled to Judgment in its Favor

J&H's Complaint alleges three claims against Twin City.  First, it seeks a declaratory judgment that it is entitled to coverage under the policy.  Second, it claims that Twin City breached the insurance contract by failing to provide coverage.  And finally, it claims "causation and damages" based on the alleged breach of contract.  For the reasons explained in this opinion, J&H's loss due to COVID-19 was not covered under the Policy and, therefore, these claims fail.

Accordingly, the defendant's motion for judgment on the pleadings will be granted.

---

[8]     The only other time virus is mentioned in the entire Policy (outside the context of computer viruses) is under "Additional Exclusions" in the Special Property Coverage Form.  The Policy provides that Twin City will not pay for the enforcement of or costs associated with any ordinance or law requiring testing or remediation of covered property due to fungi, wet or dry rot, bacteria, or virus.  [Record No. 13-1, pp. 41-42]

## IV.  Conclusion

Although the Court is extremely sympathetic with the plaintiff's position, it cannot ignore the plain, unambiguous language of the policy which excludes coverage.  And the irony is not lost on the undersigned that the outcome of this case would likely have been different if the plaintiff had not purchased the limited virus coverage.

Based on the foregoing, it is hereby

**ORDERED** that the defendant's motion for judgment on the pleadings [Record No. 25] is **GRANTED**.

Dated: March 10, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky